**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United Steelworkers of America,
AFL-CIO-CLC,

                        Plaintiff,

                                          Civ. No. 04-4927 (RHK/RLE)
                                          **MEMORANDUM OPINION
                                          AND ORDER**

v.

The Duluth Clinic, Ltd.,

                        Defendant.

Mark W. Bay, Peterson, Engberg & Peterson, Minneapolis, MN, for Plaintiff.

Joseph J. Milhalek, Fryberger, Buchanan, Smith & Frederick, Duluth, MN, for Defendant.

**INTRODUCTION**

The instant dispute is before the Court on cross-motions for summary judgment. The Plaintiff Union brought this action to compel arbitration of a grievance it asserted against the Defendant Employer under the parties' collective bargaining agreement. The Employer refused to submit the grievance to arbitration arguing that it was untimely and that the subject matter of the grievance was not within the scope of the parties' agreement to arbitrate. For the reasons that follow, the Court will grant the Union's Motion for Summary Judgment, and deny the Employer's Motion for Summary Judgment.

**BACKGROUND**

The Duluth Clinic, Ltd. (the "Employer") and the United Steelworkers of America, AFL-CIO-CLC (the "Union") are parties to a Collective Bargaining Agreement (the "CBA"), in effect for the period July 1, 2003 to June 30, 2006.[1] (See Kirsch Aff. Ex. B.) Article 13 of the CBA—entitled "Grievance and Arbitration"—provides in relevant part:

> 13.1 <u>Grievance Procedure</u>
> <u>A grievance is hereby defined as any claim by the Union or the Employer, alleging a violation of a specific contract provision or adherence to the terms and provisions of this Agreement</u>.
> \*\*\*
> Step 2.
> If the grievance is not resolved under Step 1 [Step 1 is not relevant for purposes of the instant action], it shall be reduced to writing . . . and presented to [the relevant Director and office] <u>within fifteen (15) calendar days from the date of occurrence</u>.
> \*\*\*
> [The CBA provides for a "Step 3" in the grievance process, not relevant for purposes of this instant action, and provides that the grievance may be referred to binding arbitration. Step 3 and the referral to arbitration each have time limits associated with them, dependant on the parties' inability to resolve the grievance pursuant to the previous "Step" in the grievance procedure.]
> \*\*\*
> 13.2 <u>Authority of the Arbitrator</u>
> The Authority of the arbitrator shall be limited to making an award relating to the interpretation of or adherence to the written provisions of the Agreement and the arbitrator shall have no authority to add to, subtract from, or modify in any way the terms and provisions of this Agreement.
> \*\*\*
> 13.4 <u>Time Limits</u>
> The time limitations set forth herein relating to the time for filing a grievance and the demand for arbitration shall be mandatory. <u>Failure to

---

[1] The Employer and the Union have executed numerous CBAs. The relevant provisions of those CBAs are the same. (Kirsch Aff. ¶ 5.) Thus, the Court will refer only to the CBA between "Duluth Clinic - Main and Duluth Area Satellites" and the Union, attached to the Kirsch Affidavit as Exhibit B.

> follow said time limitations shall result in the grievance being permanently waived and the grievance shall not be submitted to arbitration.

(Id. at 12-14 (emphasis added).)

The CBA also contains an Article regarding health, dental, life, and disability insurance for covered employees. Relevant to the instant action, Article 40 provides

> 40.1    Health Insurance
>
> ***
>
> Effective upon the date of ratification, SMDC[2] shall pay eighty-five percent (85%) of the cost of single health insurance coverage and seventy-five percent (75%) of the cost of family health insurance coverage for those eligible employees electing to be covered by the insurance program. SMDC shall have the right to change the insurance program and/or select an alternate carrier during the term of this agreement; the parties have agreed to meet and confer prior to the effectuation of such change. Any interruption or substantive diminution of benefits must be by mutual agreement between the parties.

(Id. at 31 (emphasis added).) SMDC acts as a partial self-insurer and it determines the cost of the premiums participating employees will be charged. (Porter Aff. ¶ 2.)

The dispute underlying this action revolves around the determination of the costs associated with the health insurance premiums the Employer charges its union employees. Beginning in May 2003, the Union made a series of written requests for information regarding how SMDC and the Employer were calculating health insurance costs, a percentage of which it passed on to union employees pursuant to Article 40. (Id. at Exs. C-

---

[2]St. Mary's Duluth Clinic Health System ("SMDC") is the corporate parent of the Employer. (O'Toole Aff. ¶ 1.) SMDC's Employee/Labor Relations Department appears to centrally control employer/union issues, including CBA negotiations and grievances for the Employer. (See, e.g., id. ¶ 15; Porter Aff. ¶ 1.)

G.)  These requests were in anticipation of and in conjunction with negotiations between the parties to renew the CBA.  The Union did not find the Employer's response to the requests for information satisfactory.

In October 2003, the Employer notified the Union of the amount it was going to increase health insurance premiums for employees effective January 1, 2004.  Shortly thereafter, the Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging that the Employer had failed and refused to provide the Union with employee insurance rate information.  (Id. ¶ 9.)  The parties settled that charge in January 2004[3], and the Employer began to provide the requested information to the Union.

However, the dispute between the parties over health insurance premiums and access to information did not end there.  After having submitted information to the Union pursuant to the settlement of the first NLRB charge, the Employer received word from the Union that its efforts were again deemed insufficient, and that the Union wanted more information.  (Id. Exs. J, K.)  On May 15, 2004, the Employer wrote to the Union, stating that it believed the Union "waived any right it may have had to bargain over premium amounts or methodology when it agreed to renewal contracts with no change in the

---

[3]The Union filed a second charge with the NLRB in October 2003, alleging that the Employer committed an unfair labor practice in unilaterally setting insurance premiums for 2004.  (Kirsch Aff. ¶ 9.)  The Union withdrew that charge the day after it settled the first charge (discussed above).  According to the Union, it agreed to dismiss the second charge during settlement negotiations regarding the first charge "because in [the Union's] judgment, the information to be submitted by the [Employer] pursuant to settlement of the first charge would be sufficient to resolve any dispute under the grievance procedure."  (Id. ¶ 10.)

language under which the [Employer] has always unilaterally established premiums." (Id. Ex. L.)

The Union responded on May 27, 2004, by filing a grievance against the Employer (the "Grievance").[4] The Grievance alleges that the Employer was acting in violation of § 40.1 of the CBA in that it had not provided the Union with health insurance information the Union had requested and that the Employer refused to bargain over that methodology and the calculations used to establish the premiums. (Id. Ex. M.) Specifically, the Grievance alleged:

> The Union has requested information regarding the methodology and calculations used in establishing the cost of . . . insurance and the eligible employee's health insurance premium for the years 2003 and 2004. While the Employer has responded with some information, it has failed to provide information in sufficient detail and format to explain or substantiate the cost of the insurance and the health insurance premium it has charged to eligible employees for the years 2003 and 2004. Furthermore, the Employer has recently announced . . . that is has no obligation to bargain with the Union over premium amounts or methodology and calculations used to establish premium amounts and that it has the right to unilaterally establish eligible employee's premium amounts.

(Id.) The "Settlement Requested in Grievance" asks that (1) the Employer provide the information sought; (2) the actual cost of health insurance be determined and employees

---

[4]The Union filed six grievances on behalf of the various Duluth Clinic "satellite clinics" it represents—specifically, Duluth Clinic - Main, Hayward, Spooner, Hibbing, Ely, and Ashland. All of the grievances are substantively the same. The only difference between them is the reference to the number of the health insurance section of the CBAs: the Duluth Clinic - Main grievance refers to § 40.1 of the CBA, while the other grievances refer to § 35.1 of the CBAs. While the number of the relevant health insurance sections is different, the substance of the sections is the same. Thus, the Court will refer only to the Duluth Clinic - Main grievance, which corresponds to the CBA referenced in this Order.

5

credited for any overpayments; (3) the Employer bargain with the Union regarding health insurance premiums; and (4) it be determined that the Employer cannot unilaterally establish the cost of health insurance and the premium charged to employees. (Id.)

On June 4, 2004, the Employer denied the Grievance as lacking merit and being untimely. (Id. Ex. N.) After numerous exchanges between the parties regarding the Grievance, and the Employer's continued refusal to submit the Grievance to arbitration, the Union brought this action to compel arbitration. The cross-motions for summary judgment followed.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for

6

trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

The Employer raises two arguments in support of its contention that the Union's Grievance is not arbitrable. First, it argues that the Union's Grievance was untimely and that untimely grievances are not within the substantive scope of the CBA's arbitration provision. (DC Mem. in Supp. at 9-15.) Second, it claims that the subject matter of the Grievance—the provision of information related to health insurance and the Employer's ability to determine costs and premiums associated therewith—is not within the scope of the CBA. (Id. at 15-20.)

**I.      Timeliness of the Grievance**

The Eighth Circuit distinguishes between jurisdictional challenges to an arbitrator's authority that are of a procedural nature, and jurisdictional challenges of a substantive nature. Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1098 (8th Cir. 2004). These distinctions are necessary "because, absent a clear and express contractual grant of authority to arbitrators to decide all issues of arbitrability, [the court considers] certain issues of arbitrability appropriate for arbitrator resolution and other issues of arbitrability appropriate for judicial resolution." Id. (citations omitted). "[J]urisdictional challenges of a substantive nature are generally for judicial resolution whereas jurisdictional challenges of a procedural nature are generally appropriate for submission to the arbitrators themselves." Id. (citation omitted). Thus, the

Court must determine whether the timeliness of the Grievance in the instant case is a procedural issue for the arbitrator or a substantive one for the Court.

"Jurisdictional challenges of a procedural nature relate to whether the party who seeks arbitration, and the arbitrators themselves, abided by the procedural safeguards set forth in the collective bargaining agreement and in the rules of the arbitral body." Id. (citation omitted). These are issues such as a party's failure to adhere to "procedural prerequisites set forth in a collective bargaining agreement's grievance and arbitration clauses." Int'l Ass'n of Bridge, Structural, Ornamental, and Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. and Constr. Prods., Inc., 359 F.3d 954, 955 (8th Cir. 2004) ("EFCO Corp."). "Procedural arbitrability issues . . . include allegations of waiver, delay, or a like defense to arbitrability." Id. at 956 (internal quotation omitted). On the other hand, "[j]urisdictional challenges of a substantive nature . . . relate to . . . the underlying issues of contract interpretation necessary to determine . . . whether the contract, in fact, authorizes the arbitrators to decide the substantive issue submitted for resolution."[5] Hope Elec., 380 F.3d at 1098 (citations omitted).

The Employer contends that the Union did not adhere to the requirements of the CBA, which provides that grievances are to be submitted to the relevant director or office "within fifteen (15) calendar days from the date of occurrence." (DC Mem. in Supp. at 10

---

[5] Substantive arbitrability also encompasses the determination of whether "the parties are subject to a valid contract that calls for arbitration." Hope Elec., 380 F.3d at 1098. Here, there is no dispute that the parties are subject to a valid agreement—the CBA—that calls for binding arbitration. (See DC Mem. in Supp. at 9.)

(citing § 13.1 of the CBA).)  The CBA also provides that a grievance "<u>shall not be submitted to arbitration</u>" if the time limitations set forth for filing the grievance are not followed.  (CBA § 13.4 (emphasis added).)  While the Employer acknowledges that, generally, timeliness issues are procedural questions for the arbitrator, it argues that the language of the CBA creates "one of those 'rare cases' where a procedural bar becomes a substantive bar." (DC Mem. in Opp'n at 11.)  That is, if an untimely grievance "shall not be submitted to arbitration at all, as the [CBA states], an arbitrator may not determine even the 'procedural' question whether the time limitations were, in fact, met.  Allowing an arbitrator to hear such a dispute would empower the arbitrator to do precisely what the parties agreed in the [CBA] could not be done—arbitrate an untimely grievance." (DC Mem. in Supp. at 12.)

In <u>Auto., Petroleum and Allied Indus. Employees Union, Local No. 618 v. Town and Country Ford, Inc.</u>, 709 F.2d 509, 513 (8th Cir. 1983), the Eighth Circuit rejected an employer's argument that the union's failure to abide by the time limits in the CBA was a substantive issue for the court.  The court also rejected the district court's reasoning "that if the union's failure to follow the grievance procedures set out in the agreement impacts on the determination of whether the dispute is subject to arbitration, then the matter is within the province of the court." 709 F.2d at 512.  The court noted that its role was "limited to the determination of whether the parties are obligated to submit <u>the 'subject matter'</u> of a dispute to arbitration," and that the "subject matter" of the dispute in that case

9

was "the discharge of an employee," not the timeliness of the grievance. Id. at 514 (emphasis added).

The Eighth Circuit recently reaffirmed this reasoning, and, in so doing, considered and rejected similar arguments to those the Employer is making in the instant case. EFCO Corp., 359 F.3d 954. In EFCO Corporation, the employer argued that the "arbitration clause [of the CBA] provide[d] specific procedural requirements that must be complied with in order for a matter to be submitted to arbitration. These procedural steps, [the employer] contends, amount to a substantive limitation on the matters that may be submitted for arbitration."[4] Id. at 956. The court, however, noted that the "procedural steps [required by the CBA] do not limit the subject matter that may be submitted to arbitration." Id. (emphasis added). Thus, the court held that "the question of whether the procedural prerequisites have be complied with . . . is a matter for the arbitrator and not for the court." Id. at 957.

In addition, the court in EFCO Corporation explicitly followed the Supreme Court's decision in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002). 359 F.3d at 956 ("This case is governed by Howsam, its predecessors, and the law of this Circuit."). In

---

[4]The CBA at issue in EFCO Corporation contained a three-step grievance procedure similar to the CBA at issue here, in that each step in the procedure contained a time limitation. The CBA's arbitration clause stated: "Any grievance or dispute between the Company and the Union or between the Company and an employee(s) that has been processed in accordance with the provisions of the preceding section of this agreement but not satisfactorily settled shall . . . be submitted to arbitration." EFCO Corp., 243 F. Supp. 2d 976, 977-78 (S.D. Iowa 2003) (emphasis added), reversed, 359 F.3d 954. The reference to the "preceding section," is to step 3 in the grievance procedure, requiring timely, written notification of an intent to arbitrate a grievance. Id. at 978.

10

Howsam, the Supreme Court considered whether an arbitration rule of the National Association of Securities Dealers ("NASD") was a procedural issue for the arbitrator or a substantive one for the court. The NASD rule provided "that <u>no dispute 'shall be eligible for submission to arbitration</u> . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute.'" Howsam, 537 U.S. at 81 (quoting NASD Code of Arbitration Procedure § 10304) (emphasis added). The Tenth Circuit had held that the determination of whether a dispute was eligible for arbitration "presented a question of the underlying dispute's 'arbitrability'" which was for the court to decide. Id. at 82. The Supreme Court reversed, concluding "that the NASD's time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called 'questions of arbitrability.'" Id. at 85-86. Thus, the issue of whether the dispute was eligible for arbitration under the rule was "presumptively for the arbitrator, not for the judge." Id. at 85.

The Court determines that, similar to EFCO Corporation and Town and Country Ford, the "subject matter" of the instant dispute between the parties is § 40.1 of the CBA pertaining to health insurance, not whether the Union's Grievance was timely filed. The relevant provisions of the CBA in the instant case do not compel a different conclusion. Nor has the Employer here directed the Court to any case in which the Eighth Circuit has accepted its argument that disputes over time limitations are issues of substantive

arbitrability.[5]  Cf., Town and Country Ford, 709 F.2d at 513 (rejecting the employer's characterization of "the issue [of the timeliness of the grievance] as one of 'substantive' arbitrability").

Furthermore, the Howsam time limit rule is similar in relevant respects to the time limit clause at issue here.  In Howsam, the rule specifically provided that disputes that did not comply with the relevant time limits were not "eligible for submission to arbitration." 537 U.S. at 81 (emphasis added).  Likewise, the instant CBA states that a grievance "shall not be submitted to arbitration" if the relevant time limits were not complied with.  (CBA § 13.4 (emphasis added).)  It does not, however, exclude from arbitration the determination of whether the grievant satisfied the required "time limitations"—an issue that the Howsam Court deemed procedural.  On the contrary, the CBA provides for arbitration of all grievances not resolved in Step 3 of the grievance procedure, and defines grievances as "any claim by the Union or the Employer, alleging a violation of a specific contract provision or

---

[5]The Employer argues that the Court should follow Local Union 89 v. Moog Louisville Warehouse, 852 F.2d 871 (6th Cir. 1988) and United Steel Workers of America, AFL-CIO v. Sloan Valve Co., 2004 WL 1534114 (N.D. Ill. July 6, 2004), both of which held that the timeliness of grievances under CBAs was an issue of substantive arbitrability for the court to decide.  The Court does not find either case persuasive, and neither is binding here.

adherence to the terms and provisions of this Agreement."[6]  (Kirsch Aff. Ex. B at 12-13 (§ 13.1 of the CBA).)

The Employer argues that "a fair reading of Howsam does not support [the Union's] position" because Howsam involved the "narrow issue" of the scope of the arbitration clause in the NASD rules.  (DC Mem. in Opp'n at 6 n.2.)  This argument is unavailing for two reasons.  First, the Eighth Circuit has explicitly followed Howsam in interpreting arbitration clauses in CBAs.  See EFCO Corp., 359 F.3d at 956; see also Hope Elec., 380 F.3d at 1099 (citing Howsam for the proposition that "issues of procedural arbitrability must be submitted to the arbitrators themselves for resolution").  Second, as discussed above, there are significant similarities between the time limit clauses in this action and in Howsam.  Accordingly, the Court determines that, based on Howsam and relevant Eighth Circuit precedent, the issue of whether the Grievance was timely filed is for the arbitrator.

## II.     Substantive Arbitrability of the Grievance

The Employer contends that the CBA does not provide for arbitration regarding the Employer's method of calculating health insurance costs, or its provision of information on

---

[6]This determination does not necessarily compel the Employer's conclusion that "[a]llowing an arbitrator to hear [this] dispute would empower the arbitrator to do precisely what the parties agreed in the [CBA] could not be done—arbitrate an untimely grievance." (DC Mem. in Supp. at 12.)  Rather, the Court's conclusion is that the arbitrator is empowered to determine whether or not the grievance is untimely; the Court is not defining how the parties' dispute should be presented to the arbitrator.  See, e.g., United Steelworkers of America AFL-CIO-CLC v. John Maneely Co., 2003 WL 22083289, at *2 (E.D. Ark. July 3, 2003) (noting that the "arbitrator is the appropriate person to determine whether the procedural issues will be decided separately from or collectively with the substantive issues of the grievances").

13

the same to the Union.[7]  (DC Mem. in Opp'n 8-11.)  There is no dispute that the Employer's argument presents an issue of substantive arbitrability for the Court to determine—that is, whether the subject matter of the grievance falls within the scope of the agreement to arbitrate.  United Steelworkers of America, AFL-CIO-CLC, Local No. 164 v. Titan Tire Corp., 204 F.3d 858, 860 (8th Cir. 2000).  Accordingly, the Court must determine whether the Grievance on its face implicates "a violation of a specific contract provision or adherence to the terms and provisions of [the CBA]" (Kirsch Aff. Ex. B at 12), as Article 13 provides.  Marathon Ashland Petroleum, LLC. v. Int'l Bhd. of Teamsters, 300 F.3d 945, 949-50 (8th Cir. 2002).  The Court must do this without considering the merits of the Grievance.  Id.

The Grievance filed by the Union alleges that § 40.1 of the CBA was violated by the Employer.  (Kirsch Aff. Ex. M.)  The Grievance quotes that provision of the CBA—specifically the Employer's agreement to "pay eighty-five percent (85%) of the cost of single health insurance coverage and seventy-five percent (75%) of the cost of family

---

[7]The Eighth Circuit recently considered a dispute between the parties here regarding the substantive arbitrability of an earlier grievance filed by the Union.  See United Steelworkers of America, AFL-CIO-CLC v. The Duluth Clinic, Ltd., ___ F.3d ___, 2005 WL 1569462 (8th Cir. July 7, 2005).  The CBAs at issue in that case and in this contain the same definition of "grievance."  See id. at *2.  The Eighth Circuit determined that, based on the definition of grievance as only relating to "violations of the CBA itself," the "arbitration clause at issue is narrow."  Id. at *3.  Thus, the court held that the grievance filed by the Union was not substantively arbitrable because the dispute between the parties involved an agreement collateral to the CBA.  See id. at *4.  That decision, however, does not impact the instant action, as there the Union argued that the Employer's conduct was in violation of a separate agreement, not the CBA; furthermore, the Eighth Circuit did not consider the time limit provision of the CBA.

health insurance coverage . . . ." (Id.) The Grievance then states that the Employer "has failed to provide information in sufficient detail and format to explain or substantiate the cost of the insurance and the health insurance premium it has charged to eligible employees for the years 2003 and 2004." (Id.) The Grievance also cites the Employer's determination that "it has no obligation to bargain with the Union over premium amounts or methodology and calculations used to establish premium amounts and that it has the right to unilaterally establish eligible employee's premium amounts." (Id.)

In Titan Tire, the Eighth Circuit determined that a grievance similar to that at issue here fell within the scope of a CBA so as to be substantively arbitrable. 204 F.3d at 860-61. There, the grievances protested "the manner in which pension benefits are calculated under the employee benefits agreement" and "a unilateral change in the copayment percentage of the group medical insurance plan." Id. at 860. The employer argued that the grievances were not subject to arbitration because they were not within the scope of the CBA. Id. In concluding that the grievances were substantively arbitrable, the Eighth Circuit noted that the "CBA addresse[d] the pension plan in some detail" and that the CBA "contain[ed] a broad arbitration clause." Id. at 861. Thus, the court held that the "presumption of arbitrability prevails when an arbitration clause contains no clear, exclusionary language." Id. (citation omitted). The Eighth Circuit further noted that one of the grievances "concern[ed] a dispute over the meaning, interpretation, or application of the provision in the CBA pertaining to health insurance coverage. It is the arbitrator's duty to fill in the gaps of a collective bargaining agreement." Id. (citation omitted).

The Union's Grievance in the instant case similarly implicates that provision of the CBA pertaining to health insurance benefits—§ 40.1. The Grievance essentially alleges that the Employer has an obligation to the Union regarding its calculations of "costs" under § 40.1. The CBA addresses the health insurance plan "in some detail," id. at 861, which the Court previously determined is the "subject matter" of the Grievance, Town and Country Ford, 709 F.2d at 514. Furthermore, while the Eighth Circuit recently determined that the CBA arbitration clause at issue here is narrow, that decision was in the context of the arbitrability of disputes involving collateral agreements. Duluth Clinic, 2005 WL 1569462, at *3. In the context of this action, it is significant that the arbitration provision "contains no clear, exclusionary language" regarding the arbitration of disputes involving health insurance.[8] Titan Tire, 204 F.3d at 861. Accordingly, the Court concludes that this is precisely the type of "claim by the Union . . . alleging a violation of a specific contract provision or adherence to the terms and provisions of [the CBA]" (Kirsch Aff. Ex. B at 12 (§ 13.1 of the CBA)) that is subject to arbitration under the CBA.

The Employer's arguments to the contrary are unavailing as they are generally directed toward the merits of the Grievance filed by the Union. For instance, the Employer asserts that "[s]o long as the percentage charged to the employees conforms to the 15/25

---

[8]To the extent that the Employer is arguing that the Union cannot enforce the settlement of the NLRB charge through its Grievance (DC Mem. in Supp. at 16-17), the Court agrees. See generally Duluth Clinic, 2005 WL 1569462. However, the Grievance does not "on its face" implicate the settlement of the NLRB charge. And while the Employer argues that § 40.1 of the CBA does not require the provision of health insurance related information to the Union, this does not raise an issue for the Court's determination.

percentage split of the CBA, there cannot be any violation of the article." (DC Mem. in Opp'n at 11.) It also contends that "the CBA does not contain a provision requiring the parties to meet and confer prior to the implementation of premium rate increases. Instead, [it] imposes a duty to meet and confer only if DC seeks to change insurance carriers or the insurance plan." (Id. at 9-10.) The Court "may not consider the merits of the grievance" but only whether "the grievance on its face implicates" an article of the CBA. Marathon Ashland, 300 F.3d at 949-50; cf. Duluth Clinic, 2005 WL 1569462, at *4 n.2 (in determining that dispute was not arbitrable, noting that, while the grievance itself alleged violations of the CBA's Articles, the Union did not claim a breach of those provisions in its arguments to the court, but only claimed a breach of a separate agreement). Importantly, the Employer has not argued that the subject matter raised by the Grievance is simply not found within the CBA. Thus, the Union's Grievance raises issues under § 40.1 of the CBA, and so the "arbitration agreement applies to the subject matter at hand."[9] EFCO Corp., 359 F.3d at 956.

## CONCLUSION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that:

I.  Plaintiff United Steelworkers of America, AFL-CIO-CLC's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**; and

---

[9] While the Court determines that the Grievance is substantively arbitrable, it expresses no opinion regarding the merits of the Grievance.

II.   Defendant Duluth Clinic Ltd.'s Motion for Summary Judgment (Doc. No. 9)

is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 18, 2005                                                                s/Richard H. Kyle
                                                                                                  RICHARD H. KYLE
                                                                                                  United States District Judge